Dionisio Santana-Diaz v. Metropolitan Life Insurance Company. Good morning. This is Attorney Frank Maceira in representation of Appalachian Dionisio Santana-Diaz. We request permission to address the court. Yes. The reason we are presenting this appeal is because we understand that the district court in awarding a summary judgment to defendants in this case, omitted to consider the fact that first the appellee met life did not inform at the termination letter of the benefits on the claimant, Dionisio Santana, that he had a time frame that was running to present his ERISA claim before court. In addition, the court failed to consider the fact that there were circumstances that would allow the application of the doctrine of equitable tolling. The circumstances of this case clearly establish that at the time that the time started to run to present to file a suit in court for Appalachian, he was still receiving the benefits of the long-term disability from met life. And therefore, at the time this time starts to run, he not only did not have the need but could not file a claim against met life because he was still receiving benefits. There was no reason at all to file a claim at that time. On the other hand, plaintiff on several occasions requested the appellee met life to inform him about the procedures to be followed in case his claim for long-term disability continuation of long-term disability benefit would be denied and those requests were not answered. At the letter that was offered to plaintiff to Appalachian on August 2011 denying benefits, there was no information regarding his right of the time frame he had to file a complaint to safeguard his rights on the ERISA Act. Does your client concede that he had a copy of the policy with the applicable statute of limitations contained there? My client concedes that, Your Honor, but as we stated in our previous document before the court, our client is a psychiatric patient. He was not representing himself. His son was trying to represent him. He did not have any attorney representing his cause. And in addition, at the time he was handed that document, it was about 26 years before the time he became disabled and started to receive benefits. So there's a long time frame here where, you know, it was important to give this remind to him about the time frame he had to safeguard his rights under the Act. Your position asks for the application of principles of equitable tolling? Right. And my understanding is it's occasioned by two things. One, the pendency of the administrative proceedings your client was engaged in. How long did that last? Mr. Santana started his appeal on the month of December 2010, and it took over a year. Over a year and a half for MedLife to issue a decision. Actually, he filed an internal appeal. So you say a year and a half? Over a year and a half in the internal administrative procedure. If the panel were to agree with you and apply every day of that year and a half period as tolling the statute of limitations, would that make it easier filing timely? It depends on when the time frame would start to count. As I was telling the Honorable Court, at the time the time frame started to count for the action in court, he could not file it because he was receiving the benefits. So it was not until November of 2008 that the time could really start to run for him to file. In your view, what's the trigger date, the start date for the running of the statute? Your Honor, we believe that the running would be when the plaintiff was notified on August 2011 of the denial of his claim of benefits. And the reason we're saying that is because the letter that was delivered to the client, to Appelan, has a language that clearly leads to confusion. If I may read the letter. In said letter, he was told that he had a right to appeal the decision in the administrative procedure. And in the event his claim was denied wholly or in part, then he would have the right to present a case in court according to Section 502 of ERISA. So it's a statement by Appelan that really led to confusion, which is important in this case. Where the Appelan is a psychiatric patient, there's a problem with the language also. He speaks Spanish, he was not represented by counsel, and also he was not given information regarding the time frame he had to file his court case. We insist also that according to what has been decided by this honorable court in the case of Orthopedics, there's an obligation under ERISA for the employer to give a specific notification to the employee in this case of the time frame he has left in order to file a case. Can I just understand what the confusion is? He gets the letter saying that after the review he can file his suit. And it doesn't identify a time limit for when he could file, right? That's your argument. What is your view of what time he thought he would have had? Indefinite? No, Your Honor. I believe that a reasonable time frame to file the action was the time frame the Appelan had. He filed the action before two years. Now, where do you get that from? From the plan document? No, I get that from other cases where I've discussed this situation and where the court has decided a two-year time frame is acceptable. But then there are other cases that suggest if you just identify six months as enough time in the initial plan, that's sufficient. And here there was six months, so I'm trying to figure out why it's so clear that the amount of time he would have would be two years. Is that the idea that you revert back to what the plan document provided? Well, the fact is that the plan document talks about three years. So why wouldn't it be three years? Why wouldn't it be three years instead of two years? Well, it could be, but what I'm trying to say, Your Honor, is that he was diligent in filing his court case before two years because the plan states it's three years. So after he received the notice of denial of the claim before two years elapsed, he filed his claim in court. Thank you. Good morning. Good morning, Your Honor. Good morning. Good morning. Good morning. Good morning. Good morning. Okay. Good morning. Okay. It was a February 17 of 2009. So, and a three-year statute applies? That is correct, yes. So, the claimant would have had to have filed honor before February 17 of 2012? That is correct. And the filing was outside that date? It was that date. It was two years after Medline's final decision. The final decision was? What was the date of filing? Yes, what was the date of filing? The final decision of Medline. Filing. Filing. Final. Filing. I'm asking filing. Oh, the filing date? Yes, me too. Oh, I'm sorry. I'm sorry. The filing date of the complaint was August 18 of 2013. So, it looks like, from your point of view, it's more than four years late. No, it's a year outside. It was a year and a half after the three-year limitation period expired. The limitation period expired on February 17 of 2012. He filed the complaint in August of 2013. It's important to note also that the complaint was filed two years after Medline's final decision and eight months after the contractual period of limitations expired. ERISA requires that the limitations period for filing a complaint be spelled out in the final termination letter to avoid problems just like the one that brings us to court today. So, what are we supposed to do about MetLife's failure to comply with that ERISA demand? Because the sole fact that a plan administrator or fiduciary may fail to set out in the final decision or letter the timeframe for filing an action does not give rise to an equitable tolling claim. As a matter of fact, the Ortega versus Candelaria case on which the plaintiff relies says so. That was a case in which this circuit specifically said that it was deciding the case on equitable principles. And then it went on to discuss equitable tolling. In other words, in order to invoke equitable tolling, the claimant must show or must establish, first of all, that there was a misrepresentation, which in this case the appellant has failed to do. It has not shown that there was a misrepresentation and that he relied on the misrepresentation in order and that was the reason for him missing the deadline for filing suit. And in this particular case, again, I must emphasize that there is no question that the plaintiff or the appellant not only have constructive knowledge, he in fact had actual knowledge. Can I understand your position in an ordinary case, plan instrument identifies the limitations period, okay? Then there's a denial. The reg says you have to notify them of the time, the limitations period, right? The reg said that's just the regulatory requirement. Well, we don't agree with the conclusion or the statement that the regulation requires that. That is a matter of law that is subject to different... Because you think it may not actually require you to do the limitations period, just that you have the right to sue? That is correct. Okay, suppose we disagreed with that and we thought it does require you to notify about the limitations period. On your view, in the ordinary case, there's no reason ever to comply with that reg because the plan instrument will always have identified the limitations period as long as 25 years ago the claimant got that plan instrument. On your position, there's no harm from not complying with the reg, right? Well, first, I think it's important to clarify that we're not talking about a 25-year period from the time that he received the plan. When does the record show he last received the plan? He said that he started working in 2002 or 2001. So 12 years ago. Or seven years ago. No, it was 10 years... From the denial, it was 10 years. Approximately 10 years. So in your position, 10 years has passed, and in that situation, the reg is just optional. No reason to comply with it because if you don't comply with it, you can always say, look, he had the plan 10 years ago, no problem. Well, it's not simply that he had the plan, it's that he had actual knowledge, as a matter of fact. In his complaint, he makes numerous reference to the plan, to the very same plan under which he filed for claim, under the same very same plan under which he was paid benefits, the same plan on which he filed an administrative appeal, and finally, the plan under which he filed for judicial relief. I mean, he obviously had knowledge of the plan, and he doesn't say that he didn't have knowledge. His only defense is, or his only claim is, listen, because the letter didn't say what I already knew, then liability should be imposed on the plan's fiduciary. And that is not what the law says. I thought his argument was, and maybe I'm missing this, is that although formally the plan did say that and he had the plan, that he had a mental incapacity which led them to be confused by the letter. Well, that's an argument that is not supported by the record. Do we have a finding on that issue about whether he knew or not from the district court? No. Why shouldn't we require one? If the issue is, as you're saying, the key issue is whether he actually had notice, why shouldn't we require a finding as to whether he did or not from the district court? Because he never alleged in the district court that he did not have knowledge of the plan. His whole argument has been consistently that simply because the letter didn't say or didn't suggest. Did he allege in the district court he was confused by the letter he received? He said that. So do we have a finding that he wasn't? Well, he didn't allege in the district court that he was confused by the letter. He did not? He did not. As a matter of fact, with regard to his claim now that he was disabled, he didn't make that argument in the district court. He weighed that. The fact is that he raises the argument of his alleged mental incompetency in his reply brief. And as this court has already decided, as a matter of fact, there is an opinion of September 15 of this year, in which the court, it was written by Judge Barron, the case of Riva versus Rico, making reference to another opinion in that same case. This court says that anyone who alleges that he was mentally incompetent to understand the legal proceedings must demonstrate that there is a causal link between the mental illness and his ability seasonally to file for habeas release. I don't know the habeas corpus case, but I think that the principle applies likewise to this case. This is a habeas case? Yes. A federal review of a state criminal conviction? That is correct. And even there we required a finding by the district court. In fact, we reversed and remanded to make him do the finding again. But in that case there had been an allegation made in the district court. You're saying there was not at all? In this case there was not any such allegation. So I understand your client's position completely. Although the regulation requires in a notice of denial letter that you tell the individual that's covered by the plan what the statute of limitations is or when they must file. And that was not done in this case. There is no consequence for failing to do so. What I'm saying is that that fact alone does not establish the elements required for equitable tolling. And that even though that's the fact that the final decision states or not states the deadline for filing a claim, that may only give rise to equitable tolling claim if and only if the elements for equitable tolling are met, which in this case are not. So an insurer in your client's position, when preparing a letter like this, and I assume it's based on a form letter, can say to itself internally, look, the regulations require that we tell this individual how to file a claim. How exactly what the drop dead line is for filing the claim. If we leave it out, we can always argue that he had a copy of the plan and therefore he knows. Is that right? I don't think that I can concede that because why in this case the letter did not say that's not in the record? We know it didn't say it. We know it didn't say yes, but the reasons why the letter didn't say that. But you're saying the reasons don't matter. Therefore, we can assume the worst reason and it would still come out the same way. Because in this case, the plaintiff or the appellant in this case is invoking equitable tolling. Therefore, he must meet with the requirements of equitable tolling. Suppose we look at it just as a harmless error issue. There's a regulatory violation. And then the question is, was he prejudiced by the regulatory violation? Forget equitable tolling. No, in this case, no. Okay, what I'm asking, we have no finding that he was not. Because the district court never asked that question. The plaintiff never raised that issue. Never raised that issue. You're arguing waiver on that issue. Yes. Who would have the burden of showing prejudice? Suppose there's a regulatory violation. He's proved a regulatory violation. With respect to whether there was harmless, whether it was just a harmless regulatory violation. Who bears the burden of making that showing? On the equitable tolling doctrine? No, just for an ordinary administrative law when you violate a rule. In this case, the party who is alleging that he suffered prejudice. He'd have to show he'd suffered prejudice. Yes. Okay. In this case, I must also point out something that, or rather one thing that the appellant raises his argument. He said that he had been alleging, or he had been requesting from Medlife the plan documents or the information regarding the procedure for filing a judicial claim. And that is not supported by the record. As a matter of fact, that statement is totally untrue. There's no record whatsoever that plaintiff ever, ever asked Medlife for information about the procedure. Neither in his brief in this court nor in documents in the district court he mentions or points out to a single document for supporting that. That's mere counsel argument which is not sufficient to establish a fact. Thank you. Thank you very much.